IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17CV167

| | | |
|---|---|---|
| **MAROLYN KAY CLARK,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **NANCY A. BERRYHILL, Acting Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. The Appeals Council ordered a new hearing and a subsequent hearing was held

1

before a different ALJ. During the hearing, Ms. Clark amended her alleged onset date to July 18, 2013. The ALJ issued a denial decision dated December 8, 2016. Plaintiff appealed and the Appeals Council adopted the ALJ's decision as its final decision. Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

C. The Administrative Decision

At step one, the ALJ found that Ms. Clark had not engaged in substantial gainful activity since her alleged onset date (Tr. 14). At step two, the ALJ found that Ms. Clark had severe impairments of back and neck pain, chronic obstructive pulmonary disease, depression, and anxiety (Tr. 14). At step three, the ALJ found that Ms. Clark's impairments did not, individually or in combination, meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P (Tr. 15-16).

Before proceeding to step four, the ALJ found that Ms. Clark had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following specific limitations:

- she should avoid concentrated exposure to dust, fumes, and gases;
- she could perform simple, routine, repetitive, unskilled work tasks;
- she could sustain concentration on simple tasks two hours before taking a break, and eight hours total in a workday;

4

- she was limited to occasional contact with supervisors, coworkers, and the public in a low stress, stable, non-production work setting

(Tr. 16).

At step four, the ALJ found that Ms. Clark was not capable of performing her past relevant work (Tr. 20). At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, including representative occupations of marker and sorter (Tr. 21). Accordingly, the ALJ found that Ms. Clark was not disabled under the Act at any time from her alleged onset date through the date of the ALJ's decision (Tr. 24).

**D. Discussion**

Plaintiff has made the following assignments of error: (1) The ALJ failed to afford appropriate weight to the opinion of the psychologist consultative examiner (CE), Dr. Freilich; and (2) The ALJ erred in determining the RFC by not incorporating the established mental limitations in the record.

In making a disability determination, the ALJ must consider all of the evidence relevant to a claim, including medical opinions. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H); 20 C.F.R. §§ 404.1520(b), 416.920(b). If any of the evidence is inconsistent, the ALJ will weigh the relevant evidence. 20 C.F.R. §§ 404.1520(b), 416.920(b). If an opinion from a treating source is well-supported by

and consistent with the objective medical evidence in the record, it may be entitled to controlling weight. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the ALJ does not give the opinion of a treating source controlling weight, the ALJ must "give good reasons" for the weight given. 20 C.F.R. §§ 404.1527(c), 416.927(c).

On November 30, 2012, Ms. Clark underwent a consultative examination with Dr. Freilich (Tr. 512-20). Dr. Freilich opined that Ms. Clark's ability to understand and follow simple directives was not impaired, her retention of simple information was mildly impaired, her ability to understand and follow complex instructions was mildly to moderately impaired, her ability to recall complex novel information was moderately to severely impaired, her ability to sustain attention while performing simple repetitive tasks was moderately to severely impaired, her ability to relate to others was severely impaired, her capacity to interact with authority figures as related to job expectations was severely impaired, and her ability to tolerate daily stressors was severely impaired (Tr. 519).

The ALJ gave some weight to Dr. Freilich's opinion that Ms. Clark had difficulty relating to others and difficulty dealing with stress because it was consistent with the other evidence of record (Tr. 19). Otherwise, the ALJ gave little weight to the opinion because it was based on a one-time examination and was inconsistent with the other evidence of record that showed that on multiple occasions Ms. Clark endorsed improvement in her mental health symptoms (Tr. 19). She also

engaged in a variety of activities of daily living such as performing the tasks associated with a successful relocation to North Carolina (Tr. 19).

Ms. Clark challenges ALJ's finding that the record showed that on multiple occasions she endorsed improvement in her mental health symptoms. She argues that the two notes referred to by the ALJ did not negate Dr. Freilich's diagnoses, and that the ALJ should not deny disability based on two isolated statements made by Ms. Clark. However, the ALJ's finding is supported by substantial evidence. In support of the finding that Ms. Clark endorsed improvement in her mental health symptoms, the ALJ considered that in March 2013, Ms. Clark endorsed some improvement in her panic attacks with Klonopin (Tr. 19, 530). The ALJ discussed that in June 2015, Ms. Clark reported that she felt a lot better now than when she first came to therapy, she felt she was a lot better off, she was no longer afraid to drive or leave her home, and she could think clearly (Tr. 19, 708, 710). The ALJ noted that Ms. Clark reported in May 2016 that her counselor was very helpful, that she felt things were getting better, and she appeared brighter (Tr. 19, 819). Thus, the ALJ considered more than two statements by Ms. Clark in reaching this finding. Furthermore, the statements were not isolated as they ranged in dates from March 2013 through May 2016 (Tr. 530, 708, 710, 819).

Ms. Clark challenges the ALJ's finding to give little weight to Dr. Freilich's opinion because it was based on a one-time exam. However, the ALJ is required to

consider the record as a whole, and determine the consistency of medical opinions with other evidence.

Here, although some portions of Dr. Freilich's opinion were consistent, other portions conflicted with the bulk of the evidence (Tr. 19). Moreover, the ALJ provided two additional reasons for giving little weight to Dr. Freilich's opinion (Tr. 19). Specifically, the ALJ noted that the opinion was inconsistent with evidence that showed on multiple occasions that Ms. Clark endorsed improvement in her mental health symptoms, and that she engaged in a variety of activities of daily living such as performing the tasks associated with a successful relocation to North Carolina (Tr. 19, 530, 708, 710, 819).

Ms. Clark argues that the State agency psychological consultants' opinions, which were given great weight by the ALJ, stated that Dr. Freilich's notes corroborated her allegations. However, the State agency psychological consultant, Dr. Tovah M. Wax, indicated "allegations credible given med tx notes (NFP) and confirmation from CE for mood and/or anxiety, though mentioned at CE, no formal MH tx indicated in file to review" (Tr. 106, 118). Dr. Nancy Y. Herrera noted "allegations generally credible given med tx notes and confirmation from CE for mood and/or anxiety" (Tr. 131, 146). Thus, it appears that Dr. Wax and Dr. Herrera found Ms. Clark's allegations generally credible, and in the case of Dr. Wax, used

Dr. Freilich's report to corroborate her allegations of mood and anxiety symptoms in the absence of other treatment records.

However, rather than fully supporting her allegations of disability, Dr. Wax and Dr. Herrera further noted that the notes from the consultative exam corroborated that Ms. Clark's current functioning was "considered to be sufficiently capable for independent work in a low stress env't with low production and interpersonal demands" (Tr. 106, 108, 131, 146).

Consistent with this opinion, the ALJ found that Ms. Clark could perform simple, routine, repetitive, unskilled work tasks; she could sustain concentration on simple tasks two hours before taking a break, and eight hours total in a workday; and she was limited to occasional contact with supervisors, coworkers, and the public in a low stress, stable, non-production work setting (Tr. 16). Thus, it appears that Dr. Wax and Dr. Herrera confirmed Ms. Clark's allegations of mood and anxiety symptoms based on Dr. Freilich's report, but did not adopt Dr. Freilich's opinion regarding Ms. Clark's functioning.

Ms. Clark argues that according to Dr. Freilich, she had a moderately severe to severe limitation in the ability to sustain attention to perform simple and repetitive tasks, and this limitation was not shown in the ALJ's RFC finding. However, as previously discussed, the ALJ gave little weight to this portion of Dr. Freilich's

9

opinion, and the ALJ was not required to include these limitations in the finding for the RFC.

Furthermore, Dr. Freilich did not clarify the meaning of "moderately severely to severe limitation," and the degree of limitation is unclear (Tr. 519). The ALJ adequately accommodated Ms. Clark's impairment in attention by limiting her to simple, routine, repetitive, unskilled work, requiring her to sustain concentration on simple tasks for only the two-hour segments between regular breaks (Tr. 16).

Ms. Clark argues that the RFC did not reflect any significant limitation in the functional ability to relate to others, and that Dr. Freilich opined that she was severely impaired in the ability to relate to others, while the ALJ only limited her to occasional contact. To the contrary, the ALJ found that Ms. Clark was limited to occasional contact with supervisors, coworkers, and the public (Tr. 16). Moreover, by limiting Ms. Clark to unskilled work, the ALJ limited her to work primarily involving objects, rather than people. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2 §§ 201.00(i), 202.00(g) (unskilled work generally involves working with objects rather than people (or data)); SSR 85-15, 1985 WL 56857, at *4 (same). Dr. Freilich did not clarify the meaning of "severely impaired," and the degree of limitation is unclear (Tr. 519). Furthermore, the ALJ only gave some weight to Dr. Freilich's opinion regarding Ms. Clark's social functioning, and the ALJ was not required to adopt the opinion (Tr. 19).

Substantial evidence supports the ALJ's finding to give some weight to Dr. Freilich's opinion that Ms. Clark had difficulty relating to others and difficulty dealing with stress because it was consistent with the other evidence of record (Tr. 19). In reaching this finding, the ALJ considered that Ms. Clark had difficulty handling stress, and difficulty getting along with family, friends, neighbors, and others (Tr. 15, 407-08). However, other evidence showed that she chatted online with friends, had family visits, and she had a supportive friend, Dale (Tr. 15, 406, 676). She was never laid off from a job due to difficulty getting along with others, she resided with a roommate without any difficulties, and she talked to him when she was having a hard time (Tr. 15, 408, 674, 681, 715, 720). The ALJ considered and gave great weight to the State agency psychological consultant opinions from Dr. Wax and Dr. Herrera (Tr. 20, 109, 121, 135, 150). Dr. Wax opined that Ms. Clark was capable of interacting appropriately with co-workers, but had some difficulty interacting appropriately with the general public (Tr. 109, 121). Dr. Herrera opined that Ms. Clark was capable of routine interactions with coworkers and supervisors (Tr. 135, 150).

Ms. Clark argues that the ALJ selectively gave weight to portions of Dr. Freilich's opinion that were consistent with his RFC, but discounted those portions that were inconsistent with his RFC (Pl. Br. 7). However, the ALJ was not required to adopt Dr. Freilich's opinion, and the ALJ properly evaluated the opinion and gave

varying amounts of weight to portions of the opinion based on separate and distinct reasons. The agency's regulations specifically provide that the final responsibility for determining RFC and disability lies with the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946; *see also* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 416.927(d)(2), 416.945(a)(3); SSR 96-5p, 1996 WL 374183, at *2 (S.S.A. 1996). Any requirement that an ALJ's RFC finding must be based on a physician's medical source statement would confer upon the physician the authority to determine the RFC, and "would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p, 1996 WL 374183, at *2 (S.S.A. 1996). The issue, then, is whether the ALJ properly weighed Dr. Freilich's opinion. And, for the reasons stated above, the ALJ did so. Accordingly, the ALJ's evaluation of Dr. Freilich's opinion is supported by substantial evidence.

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales*, *supra*; *Hays v. Sullivan*, *supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*, plaintiff's Motion for Summary Judgment will be

denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: July 2, 2018

Graham C. Mullen
United States District Judge